IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**CHARLENE YOUNG,**

    **Plaintiff,**

vs.                                                      CIVIL ACTION NO. 1:19-CV-00193

**ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for widow's benefits under Title II of the Social Security Act, 42 U.S.C. § 402(e). By Order entered March 19, 2019 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Motion for Summary Judgment and Memorandum in support of same and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 15, 16, 18, respectively)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** Plaintiff's request for remand (ECF No. 15), **DENY** Defendant's request to affirm the decision of the Commissioner (ECF No. 18); **REVERSE** the final decision of the Commissioner; and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Charlene Young, (hereinafter referred to as "Claimant"), protectively filed her application for widow's benefits on March 15, 2016, alleging disability since December 9, 1993, because of a heart condition "(leaky heart valve)", shortness of breath, fatigue, weakness, chronic lower back pain, Retroflex Syndrome, chronic leg pain with involuntary leg jerking, pain related insomnia, chronic leg cramping, depression, anxiety, restless leg syndrome, limiting reading and writing abilities, and a reading comprehension impairment.[1] (Tr. at 211-213, 233) Her claim was initially denied on September 27, 2016 (Tr. at 145-149) and again upon reconsideration on January 18, 2017. (Tr. at 151-153) Thereafter, Claimant filed a written request for hearing. (Tr. at 156-157)

An administrative hearing was held on December 12, 2017 before the Honorable Valerie Balowek, Administrative Law Judge ("ALJ"). (Tr. at 87-107) On April 25, 2018, the ALJ entered an unfavorable decision. (Tr. at 68-86) On May 18, 2018, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 208-209) The ALJ's decision became the final decision of the Commissioner on February 22, 2019 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-7)

On March 18, 2019, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative

---

[1] In her Disability Report – Appeal, submitted on November 17, 2016, Claimant alleged that her impairments had worsened, including experienced more fatigue, shortness of breath, back and leg pain that is constant and radiates from her lower back into her left leg and that this has impaired her ability to complete household chores without taking breaks. (Tr. at 268) In a subsequent Disability Report submitted on April 17, 2017 after the reconsideration level of review, Claimant asserted that all of her conditions have worsened, including having greater levels of anxiety and "near constant depression." (Tr. at 292)

Proceedings. (ECF Nos. 9, 10) Subsequently, Claimant filed a Motion for Summary Judgment and a Memorandum in Support of Motion for Summary Judgment (ECF Nos. 15, 16), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 18). Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 29 years old as of the alleged onset date but was 53 years old by the time of the administrative hearing, and therefore considered a "person closely approaching advanced age." See 20 C.F.R. § 404.1563(d). (Tr. at 81) Claimant participated in the special education program through the eighth grade, never worked, and remarried a few months prior to the hearing. (Tr. at 91, 234)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id.

§ 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c). Those Sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and

how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specifies how the

findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that Claimant met the non-disability requirements for disabled widow's benefits. (Tr. at 73, Finding No. 1) Next, the ALJ determined that Claimant's prescribed period of disability ends on November 30, 2020. (Id., Finding No. 2) The ALJ then found that Claimant had not engaged in substantial gainful activity since the alleged onset date of December 9, 1993. (Id., Finding No. 3)

At the second inquiry, the ALJ found that Claimant had the following severe impairments: coronary artery disease; obesity; mild peripheral vascular occlusive disease; borderline intellectual functioning; depression; and generalized anxiety disorder. (Tr. at 74, Finding No. 4) At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 5) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work

> except she requires simple and repetitive jobs with few changes in the routine. The job cannot have academic requirements. She requires a job without a fast-pace and cannot perform a job with strict production quotas. She can tolerate occasional interaction with the public, and frequent contact with coworkers and supervisors.

(Tr. at 78, Finding No. 6)

At step four, the ALJ found Claimant had no past relevant work, thus the transferability of job skills was a nonissue. (Tr. at 81, Finding Nos. 7, 10) Nevertheless, based on Claimant's age, limited education, work experience and RFC, the ALJ determined that there were other jobs that existed in significant numbers in the national economy that Claimant could perform. (Id., Finding Nos. 8, 9, 11) Finally, the ALJ determined Claimant had not been under a disability from December 9, 1993 through the date of the decision. (Tr. at 82, Finding No. 12)

**<u>Claimant's Challenges to the Commissioner's Decision</u>**

In support of her appeal, Claimant asserts that the ALJ's RFC assessment is deficient insofar as the ALJ provided no analysis of Claimant's limitations on a function by function basis. (ECF No. 16 at 5-6) Specifically, Claimant contends that the physical RFC determination does not account for whether her limitations impair her abilities to bend, stoop, kneel, crouch, crawl, etc. when the medical record indicated that she had several physical impairments that limited her range of motion in both hips, neck, back and legs, in addition to her difficulty walking on her heels and toes. (Id. at 7-8) Claimant requests this Court to remand to correct these errors. (Id. at 9)

In response, the Commissioner states that in her assessment of the RFC, the ALJ considered all the relevant evidence, including the medical record, and appropriately concluded that Claimant's impairments did not substantiate her claims that they were work preclusive. (ECF No. 18 at 8-10) The Commissioner argues that the medical examiner's findings only indicated Claimant's physical impairments caused mild or "slight" limitations and that no functional limitations beyond what the ALJ imposed were noted. (Id. at 10) In addition, the Commissioner contends that the ALJ properly evaluated the medical opinions of record against the relevant evidence, and noted the absence of any medical opinion that Claimant was more exertionally

limited than the ALJ found. (Id.) The Commissioner states that Claimant fails to identify any functional limitations that the ALJ overlooked, that none of the jobs identified by the vocational expert required climbing or crawling, and the ALJ provided the necessary narrative allowing for meaningful review of her analysis and conclusions. (Id. at 10-12) The Commissioner points out that the Fourth Circuit flatly rejected a *per se* rule requiring remand where an adjudicator does not perform an explicit function by function analysis. (Id. at 12-13) Despite Claimant's argument that her physical impairments suggest greater functional limitation than noted by the ALJ, the Commissioner argues that the record simply did not support these claims. (Id. at 14)

In sum, the Commissioner contends that the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 15)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

Medical Evidence:

On January 24, 2002, Claimant presented at the emergency room with a sore neck. (Tr. at 375) She was diagnosed with a neck strain after a cervical x-ray was unremarkable. (Tr. at 375, 390)

In November 2004, Claimant reported she was "still having chest pain." (Tr. at 320) Previously, her care providers assessed her for acid reflux, but acid reflux in her distal and proximal esophagus were within normal limits. (Tr. at 371) A stress test was normal. (Tr. at 370) Claimant underwent testing with a Holter monitor, which showed premature ventricular contractions

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

(PVCs), couplets (two PVCs in a row), and premature atrial contractions (PACs). (Tr. at 321) Jack Meshel, M.D., adjusted Claimant's medication. (e.g., Tr. at 322) On February 14, 2005, Claimant exhibited a normal cardiac sinus rhythm, with an S1 of normal intensity, S2 split physiologically; and she had an S4 gallop with systolic click. (Tr. at 323) A cardiac catheterization eight months later, on October 19, 2005, showed normal left ventricular function and no angiographic coronary artery disease. (Tr. at 318, 328) Claimant also underwent a laparoscopic 360-degree Nissen fundoplication (surgical treatment for reflux) the following February, in connection with her diagnosed medically refractory gastroesophageal reflux disease. (Tr. at 367)

A January 2007 cardiac stress test was normal (Tr. at 366), as was a myocardial perfusion spect scan (Tr. at 386). Gastrointestinal imaging eleven months later showed a small sliding distal hernia (Tr. at 385), and Claimant underwent an esophagogastroduodenoscopy (EGD) (Tr. at 364). Chest x-rays were normal in February 2009 (Tr. at 383), May 2009 (Tr. at 381), and February 2010 (Tr. at 379).

Several years elapsed, and on June 12, 2014, a 2-D and Doppler echocardiogram showed trace mitral regurgitation and trace tricuspid regurgitation, with an overall normal left ventricular systolic function. (Tr. at 430-432) Several months later, on December 2, 2014, a lower extremity arterial Doppler study showed mild peripheral vascular occlusive disease. (Tr. at 433) When Claimant presented to the emergency room with chest pain two weeks later, a chest x-ray was unremarkable. (Tr. at 336, 345) Her cardiac rate and rhythm were normal; and her care providers' clinical impression was of gastroesophageal reflux disease. (Tr. at 337) A December 19, 2014, noninvasive arterial study showed no evidence of large vessel disease. (Tr. at 401)

A 2-D and Doppler echocardiogram, the following June, showed moderate concentric left

ventricular hypertrophy, with trace mild regurgitation and trace-to-mild tricuspid regurgitation, though overall left ventricular systolic function was normal. (Tr. at 441) A carotid duplex study showed mild intimal thickening. (Tr. at 440) Claimant also presented to Dr. Meshel with reported chest pain, on February 17, 2016. (Tr. at 447) In this and subsequent visits, she would exhibit PVCs, and at times a systolic murmur, decreased pulses, and/or trace edema in her extremities, though her sinus rhythm was normal. (e.g., Tr. at 445, 448, 454, 457, 460, 462, 464)

In the meantime, at a psychiatric examination on July 2, 2016, Claimant's care provider observed her mildly slumped posture with a slow gait. (Tr. at 410) Spirometry testing the following month was normal. (Tr. at 418)

On September 19, 2016, Andres Rago, M.D., recounted that Claimant needed to change positions after prolonged sitting, she could not squat all the way, and she could walk on her heels and toes only with some difficulty; she had no difficulty rising from a seated position; she exhibited only minimal difficulty getting on and off the examination table; she walked without an assistive device; and her gait pattern was normal. (Tr. at 425) On examination, Claimant exhibited, among other things, slight tenderness about her lumbosacral spine, and a slight limitation of motion in her hip joints, but her arm and leg joints were unremarkable, and an examination of her lumbosacral spine revealed no abnormal curvatures. (Tr. at 426) She had no muscle weakness or atrophy. (Id.) She also had no motor or sensory deficits, and she could write, button, and pick up coins with no difficulty. (Id.) Dr. Rago indicated that Claimant's present prognosis was not encouraging because she had run out of medication, but with continuous adequate treatment and follow-up, her condition was expected to improve. (Id.)

Claimant exhibited, among other things, no tremors in a psychiatric examination the

following April. (Tr. at 482) Holter monitor testing on May 9, 2017 included findings of PVCs and PACS. (Tr. at 469)

Medical Opinion Evidence:

On September 26, 2016, state-agency expert physician Narendra Parikshak, M.D., reviewed Claimant's medical records and opined that she retained the residual functional capacity to occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds; stand/walk, and sit for 6 hours each per workday; frequently balance, stoop, kneel, and crouch; and occasionally climb and crawl. (Tr. at 122-123) Subsequently, on January 17, 2017, state-agency expert physician Pedro F. Lo, M.D., independently reviewed Claimant's medical records and affirmed Dr. Parikshak's opinion. (Tr. at 138-139)

Claimant's Daily Activities:

During the relevant period, Claimant cared for her teenage son. (Tr. at 248, 257) She also had a dog, which her son reportedly mostly cared for (and which she later reported having given away); drove; shopped; prepared simple meals; and did household chores including attending to household cleanliness and doing laundry. (Tr. at 248-250, 258-260, 282-284, 415) She reported no problem attending to her personal care. (Tr. at 248) In an August 2017 report, Claimant also reported having gotten married. (Tr. at 477)

**The Administrative Hearing**

Claimant Testimony:[3]

Claimant testified that she filed for disability because she has no income. (Tr. at 91) Claimant stated that her lack of education, two leaky heart valves, shortness of breath, lower back

---

[3] Claimant appeared without a representative at the administrative hearing. Although the ALJ provided her with an opportunity to get a representative or lawyer to assist her with her claim, Claimant declined. (Tr. at 90)

pain that runs into her legs and a "messed-up [left] knee" render her disabled. (Tr. at 92) She explained that her knee had bothered her off and on for years. (Id.) She carried a cane that was not prescribed, although she stated she does not use it always. (Tr. at 93)

Claimant testified that she was unaware she had a leaky heart valve until she was 40 years old, but had been born with it and later developed two leaky valves. (Id.) Her symptoms include an "AFib heartrate", where it goes "real fast" and sometimes goes "real slow." (Id.) She sometimes gets chest pains that can last all day long. (Tr. at 96) She testified that she had chest pains lasting a couple of days that she thought was a heart attack and ended up in the emergency room. (Id.)

Claimant stated that she sees Dr. Robertson for her mental health problems and that he put her depression medication. (Tr. at 94) She explained that she cannot sleep, has no motivation due to lack of income and education to get a job. (Id.)

As for what she does during the day, Claimant testified she rather stays in bed all day because there's no point in getting up. (Tr. at 95) She explained bill collectors call and that its hard to live on $1200 per month. (Id.) Claimant stated that she does the housework as much as she can and that her husband helps with laundry, dishes and cooking. (Tr. at 96) She testified that her husband mostly does the grocery shopping. (Id.) She does not drive often; she does not like the fast traffic on four lane roads. (Id.)

Harry Tanzey, Vocational Expert ("VE") Testimony:

In response to the ALJ's hypothetical concerning an individual with Claimant's vocational profile who could perform medium work, could perform only simple and repetitive jobs with few changes in routine and no academic requirements, could not tolerate a fast pace or strict production quotas, and could frequently interact with coworkers and supervisors but could only occasionally

interact with the general public, the VE testified that such an individual could perform work existing in significant numbers in the national economy, including – were the individual limited further to light work – certain light exertional jobs such as a hand packer, grader/sorter, or laundry worker. (Tr. at 104-105)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

Claimant's RFC Assessment:

A claimant's RFC represents the *most* that the individual can do despite her limitations or restrictions. See SSR 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. § 404.1545(a). The RFC determination is an issue reserved to the Commissioner. Id. § 404.1527(d).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). The Fourth Circuit and this Court have recognized that the RFC assessment is an administrative finding rather than a medical finding. See, Felton–Miller v. Astrue, 459 F.App'x. 226, 230–231 (4th Cir. 2011) (stating that RFC "is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record.") (citing 20 C.F.R. § 404.1546(c)); Youkers v. Colvin, No. 3:12–9651, 2014 WL 906484, at *10 (S.D.W.Va. Mar. 7, 2014). Thus, an ALJ is not required to obtain an expert medical opinion as to a claimant's RFC. Felton–Miller, 459 F.App'x at 230–31; Hucks v. Colvin, No. 2:12–cv–76, 2013 WL 1810658, at *9 (N.D.W.Va. Apr. 3, 2013), report and recommendation adopted by 2013 WL 1810656 (N.D.W.Va. Apr. 29, 2013).

In this case, the ALJ noted Claimant testified that she filed for disability because she had no income, was uneducated, suffered from shortness of breath, had some depression, and that she stayed in bed all day because there was no point in getting up. (Tr. at 79) In her examination of the

objective evidence of record, the ALJ determined that Claimant's allegations of debilitating physical symptoms were inconsistent with the clinical findings. (Id.) The ALJ then discussed the evidence that indicated Claimant was not as limited as she alleged: that her coronary artery disease was "mild" because conservative treatment had stabilized this condition, and under medication management, her symptoms, which included shortness of breath and fatigue, have been stable (Id.); that Claimant's descriptions of her symptoms were vague and general, "lacking the specificity that might otherwise make it more convincing (Id.); that the description of her symptoms and limitations in the record "has generally been inconsistent and unpersuasive" (Id.); and that the record contains no opinions from treating or examining physicians indicating Claimant is disabled or had greater limitations than those determined in the decision (Id.).[4] The ALJ concluded that with respect to Claimant's alleged symptoms and limitations from her physical conditions, "those limitations have been adequately assessed in the residual functional capacity above." (Tr. at 80-81)

Though "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)), it is necessary that an ALJ " 'must build an accurate and logical bridge from the evidence to his conclusion.' " Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). There is no mention of Dr. Rago's consultative examination report in her decision. There is no dispute that Dr. Rago observed that Claimant had "some difficulty" with walking on her heels

---

[4] The ALJ noted that the State agency consultants found Claimant to have mild limitations in activities of daily living, although the ALJ assigned this particular opinion little weight, given the overall medical evidence of record. (Tr. at 78, 80)

and toes, could not squat all the way due to complaints of back pain, that she walked without an assistive device, exhibited no abnormal gait pattern, and had minimal difficulty getting on and off the examination table. (Tr. at 425) Dr. Rago's examination showed some deficits in hip abduction bilaterally, neck extension and rotation, lumbar flexion and extension bilaterally and straight leg raising both sitting and supine, no deficits in Claimant's arm and leg joints, and although slight tenderness was noted across the lumbosacral spine, no abnormal curvatures were revealed. (Tr. at 426, 429) In his summary and assessment, Dr. Rago noted Claimant "has chronic low back syndrome with radiculitis and may have a degenerative disk disease" but did not endorse any functional limitations. (Tr. at 426) Dr. Rago noted that he reviewed no medical records prior to his examination. (Id.)

Although the ALJ briefly mentioned Claimant's allegations of pain symptoms, she did not acknowledge Claimant's specific statements concerning chronic back pain that radiated into her legs, of which she testified during the administrative hearing. Interestingly, the record contains no treatment notes *specifically* concerning Claimant's alleged back and radiculopathy issues[5], with the possible exception of a "Vascular Report" from December 19, 2014 documenting a referral for a noninvasive arterial study due to Claimant's bilateral leg pain and history of hypertension; as noted *supra*, no evidence of large vessel disease was noted. (Tr. at 401) The record also indicates that in her application for benefits, Claimant alleged that she had been treated by various providers

---

[5] In her review of the mental health treatment records, the ALJ noted Claimant "self-referred herself to a psychiatrist, Dr. Robertson, in April 2017, to address pain and depression." (Tr. at 77) The ALJ further noted that Dr. Robertson diagnosed Claimant with depressive disorder, not otherwise specified, chronic pain syndrome, and a history of learning disorders, not otherwise specified. (Id.) The record indicates that Dr. Robertson prescribed Cymbalta for Claimant's chronic pain syndrome. (Tr. at 482) The ALJ observed that Dr. Robertson's "last note, dated November 15, 2017, states that medication was effective and tolerable, and the claimant was doing well, with good sleep." (Tr. at 77, 476-483) The undersigned notes that during the initial evaluation with Dr. Robertson in April 2017, Claimant reported that her primary care provider, Dr. David Ofsa, "had once treated her with Lortab 7.5 mgs as needed for pain but she denies taking any recent pain medication." (Tr. at 481)

for her chronic lower back, hip and leg pain, including the Green Valley Family Clinic in 2009, March 31, 2016 and May 30, 2016 (Tr. at 238), Marden Physical Therapy in 2009 and 2010 (Tr. at 239), Adnan N. Silk, M.D. in 2008 and 2010 (Tr. at 240), and Hiep Le, M.D. in 2014, October 2016 and November 2016 (Tr. at 270). It is notable that Claimant's alleged lower back, hip and leg pain treatment at Green Valley Family Clinic and by Dr. Le occurred since the beginning of Claimant's prescribed period, November 21, 2013, when her husband (wage earner) died. Dr. Rago's consultative examination report noted Claimant complained of having chronic low back pain that she attributed to a motor vehicle accident in 2002, that x-rays and an MRI were done at the time, "and [she] was told that she had disk problem", however "[s]he has undergone physical therapy which helped to some extent." (Tr. at 423)

To be sure, the medical evidence with respect to Claimant's alleged chronic lower back, hip, and bilateral leg pain is scant. However, there is medical evidence that corroborates these allegations and that Claimant did receive some treatment for these conditions, and the fact that the ALJ neglected to reference or mention Dr. Rago's findings, or acknowledge Claimant's specific complaints of lower back pain with radiculopathy in the written decision is significant. The ALJ's finding that Claimant's "description of the symptoms and limitations . . . throughout the record has generally been inconsistent and unpersuasive . . . [w]hile . . . could result in pain and other symptoms that would limit her abilities to perform some work activities, those limitations have been adequately assessed in the residual functional herein" does not provide the necessary narrative or explanation for the conclusion that Claimant remained capable of light work despite her ongoing complaints of lower back pain with radiculopathy that allows for meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). In short, without a better explanation,

this Court is "left to guess about how the ALJ arrived at his conclusions" therefore remand is necessary. Id. at 637.

In sum, the undersigned **FINDS** the RFC assessment with respect to Claimant's alleged chronic lower back pain with radiculopathy is not supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Claimant's request for remand for the correction of these errors (ECF No. 15), **DENY** the Defendant's request to affirm the decision below (ECF No. 18), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings in order for the ALJ to properly consider and evaluate the evidence of record with respect to Claimant's allegations of chronic lower back pain with radiculopathy that supports an appropriate RFC assessment.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: September 24, 2019.

*[Signature]*
Omar J. Aboulhosn
United States Magistrate Judge